IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JONATHAN F. RAMOS,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>BECTON, DICKINSON AND COMPANY, and BD MEDICAL-MEDICATION DELIVERY SOLUTIONS,<br><br>　　　　　　　　Defendants. | 8:23CV191<br><br>MEMORANDUM AND ORDER |

Plaintiff filed a Complaint on May 12, 2023. Filing No. 1. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 5. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

### I.　SUMMARY OF COMPLAINT[1]

Plaintiff sues his former employer, Becton, Dickinson and Company and BD Medical-Medication Delivery Solutions (collectively "Defendants"), alleging discrimination and retaliation claims under Title I and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 to 12117; 42 U.S.C. § 12182, and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 to 1126. Filing No. 1 at 3. Plaintiff alleges Defendants failed to hire him, failed to accommodate his disability, retaliated against him, subjected him to unequal terms and conditions of his employment, engaged in harassment, and terminated his employment

---

[1] Plaintiff's Complaint is difficult to understand, but the Court has done its best to discern Plaintiff's meaning, keeping in mind that Plaintiff has limited English language abilities. *See* Filing No. 1 at 4, 8.

based on his disability.[2] Filing No. 1 at 4. Plaintiff is deaf, has limited English language ability, and communicates via American Sign Language ("ASL"). The Court takes judicial notice of other pleadings filed by Plaintiff in this Court in which Plaintiff has explained:

> ASL is a complete and complex language distinct from English, with its own vocabulary and rules for grammar and syntax—it is not simply English in hand signals. ASL has no written component. For several reasons, including early language deprivation, many deaf people have a very limited ability to read and write in English.

Filing No. 1 at 8, Case No. 8:23CV81 (quoting *Nat'l Ass'n of the Deaf v. Trump*, No. 20CV2107, 2020 WL 4452083 (Complaint ¶¶ 25-25)); *see also* Filing No. 1 at 8, Case No. 8:20CV375.[3]

Although unclear, it appears Plaintiff was placed with Defendants through an employment staffing service, Advance Service, Inc. ("ASI").[4] Plaintiff alleges Defendants failed to work with Plaintiff when he requested an ASL interpreter "live person" in June 2021. Defendants rejected Plaintiff's request and used their own interpreter, which appears to be some type of computer-based interpretation service. Plaintiff met with two men, Joe and Chad, in his interview and they apologized for the interpretation service "shut[ting] down." Plaintiff explained his English was limited and he could communicate in "simpl[e] Answer/Question" format. After Defendants' Human Resources ("HR") rejected Plaintiff's request for an ASL interpreter in the orientation

---

[2] Plaintiff attached to his Complaint a right-to-sue letter issued by the U.S. Equal Employment Opportunity Commission on March 29, 2023. Filing No. 1 at 7. Plaintiff timely filed his suit on May 12, 2023.

[3] The Court can sua sponte take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981).

[4] The Court takes judicial notice that ASI is an employment staffing service with a location in Columbus, Nebraska, where Plaintiff resides. *See* https://www.advanceservices.com/locations/ (last visited Dec. 20, 2023) (listing location for Columbus, Nebraska).

room in June 2021, Defendants told Plaintiff to talk to ASI. ASI also declined to provide an ASL interpreter and "told [Plaintiff] talk to [Defendants]." Filing No. 1 at 8. On Defendants' orientation day on July 14, 2021, Plaintiff had "no interpreter, no access." Plaintiff states he requested an interpreter several times, but was told by ASI to talk to Defendants, while Defendants told Plaintiff to ask ASI. Plaintiff alleges Defendants provided Spanish interpreters on the floor. Id.

On October 15, 2021, there was a job opening about which Plaintiff inquired, but Joe told Plaintiff, "no." Id. On November 29, 2021, Plaintiff texted Joe saying, "you lie [to] me, co-worker hiring as my job," which the Court understands to mean that someone else was hired for the job opening Plaintiff inquired about and that job was the same one Plaintiff was already performing. Id. Joe then ordered Plaintiff's termination by the afternoon. ASI texted Plaintiff and told him there was "no work" for him with Defendants. Id. Plaintiff states no one explained why his job ended with Defendants, but Plaintiff learned through the Equal Employment Opportunity Commission ("EEOC") that Defendants reported his job ended due to Plaintiff's poor job performance, which Plaintiff disputes as untrue as "they never told [him]." Id. Instead, it appears Plaintiff alleges that Defendants' production was slow due to missing supplies like "foam and boxes" and broken machinery, which caused Plaintiff's job performance to also decrease. Id. Plaintiff reported the problems to a manager and supervisor and they knew of the problems. Plaintiff alleges he was good at his job.

For relief, Plaintiff wants Defendants to be required to work with the Nebraska Commission for the Deaf and Hard of Hearing regarding interpreter and employment issues and Nebraska Vocational Rehabilitations to "help people with disabilities." Id. at

5. Plaintiff also wants Defendant to provide an interpreter "on the floor" and Defendant's supervisors, managers, co-workers, and senior staff to receive training on deaf culture. *Id*. Plaintiff also requests damages. *Id*. at 6.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court

4

should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III. ANALYSIS

Liberally construed, Plaintiff brings three claims under Title I of the ADA and the NFEPA, alleging Defendants discriminated against him on account of his hearing disability, failed to provide him a reasonable accommodation, and retaliated against him. Plaintiff also alleges a violation of Title III of the ADA. Filing No. 1 at 3. For the reasons that follow, Plaintiff's claims under Title I of the ADA and the NFEPA will be allowed to proceed to service of process, but his Title III ADA claim will be dismissed.

### A. Disability Discrimination

As set forth in the ADA:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The disability discrimination provisions in the NFEPA are patterned after the ADA, and the same analysis governs Plaintiff's claims under the ADA and the NFEPA. *See Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002).

An employee seeking relief under the ADA for discrimination must establish that: 1) he has a disability as defined in 42 U.S.C. § 12102(2); 2) he is qualified to perform

5

the essential functions of the job, with or without reasonable accommodation; and 3) he has suffered an adverse employment action because of his disability. *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in his or her complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by Twombly*, 550 U.S. at 570. However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

As to the first element, a person is disabled within the meaning of the ADA only if he demonstrates that he has a physical or mental impairment which substantially limits one or more of his major life activities, that he has a record of such an impairment, or that he is regarded as having such an impairment. *Amir v. St. Louis University*, 184 F.3d 1017, 1027 (8th Cir. 1999). "Major life activities under the ADA are basic activities that the average person can perform with little or no difficulty, including 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

working.'" *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 861 (8th Cir. 2006) (quoting 29 C.F.R. § 1630.2(l)).  Plaintiff alleges he has a hearing disability requiring him to communicate through American Sign Language and, thus, has alleged a disability under the ADA.

Regarding the second element, Plaintiff alleges he was good at his job and any poor performance issues were due to production problems outside of his control, including missing materials and broken machinery.  To be a "qualified individual" within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.  *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370–71 (8th Cir. 2018).  Giving Plaintiff the benefit of every inference, the Court determines, for purposes of initial review only, that Plaintiff has alleged sufficient facts to suggest he was a qualified individual under the ADA with respect to his position with Defendants.

Liberally construed, Plaintiff alleges Defendants failed to hire him for an open position identical to the one Plaintiff was filling for Defendants through ASI and terminated Plaintiff from his employment on November 29, 2021.[5]  Plaintiff's allegations constitute an adverse employment action under the ADA.  Plaintiff alleges Defendants' employee, Joe, ordered Plaintiff's termination after Plaintiff confronted Joe about lying to Plaintiff about the open position and hiring someone else to fill the position.  Plaintiff

---

[5] While Plaintiff also alleged that Defendants engaged in "[h]arassment of Deaf," Filing No. 1 at 4, there are absolutely no facts alleged to support Plaintiff's assertion nor to support a finding that such harassment constituted an adverse employment action or created a hostile working environment.  *See Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (internal quotation marks and citation omitted) (To prevail on a hostile work environment claim under the ADA, a plaintiff must show "that he is a member of the class of people protected by the statute, that he was subject to unwelcome harassment, that the harassment resulted from his membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of his employment.").

7

also disputes that his job performance was poor, as Defendants reported to the EEOC, and alleges that Defendants were aware of the production problems that caused Plaintiff's job performance to decrease. Giving these allegations the most liberal construction, the Court concludes that Plaintiff has alleged a plausible discrimination claim under Title I of the ADA.

**B. Failure to Accommodate**

Plaintiff next claims that Defendants failed to accommodate his disability by refusing to provide an in-person ASL interpreter at his orientation and "on the floor." *See* Filing No. 1 at 4, 8. To state a failure-to-accommodate claim, a plaintiff first "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). "The plaintiff then has the burden to show 'that the requested accommodation is reasonable on its face, i.e., ordinarily or in the run of cases.'" *Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1061 (W.D. Ark. 2017) (quoting *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004) (internal quotation marks omitted)).

An employer is not obligated to provide an employee the accommodation he or she requests or prefers. *See, e.g., Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000). *See also Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010) (defendants were not required to employ plaintiff in team leader position, even if he could maintain better control of his diabetes in that position). The employer need only provide some reasonable accommodation. *Hennenfent v. Mid Dakota Clinic, P.C.*, 164 F.3d 419, 422 n.2 (8th Cir. 1998); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1137 (8th Cir. 1999) ("If more than one accommodation would allow the

individual to perform the essential functions of the position, 'the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.'").

Here, Plaintiff alleges Defendants refused his request for an in-person ASL interpreter in favor of "their own interpreter" through some computer-based service, but Defendants' interpreter service "shutdown" and Plaintiff had "no access" during his orientation. Filing No. 1 at 8. Plaintiff also alleges that Spanish interpreters were provided on the floor. *Id.* Given the liberal construction applied to pro se pleadings, the Court concludes that Plaintiff has stated a plausible failure-to-accommodate claim.

**C. Retaliation**

Although unclear, Plaintiff may be claiming that he was not hired and terminated because he requested an accommodation. "To establish unlawful retaliation under the ADA, a plaintiff must show that (1) []he engaged in a statutorily protected activity, (2) the employer took an adverse action against [him], and (3) there was a causal connection between the adverse action and the protected activity." *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013) (citing *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir.1999)).

Requesting an accommodation may be considered a protected activity under the ADA. *See Hill*, 737 F.3d at 1219. Again, giving Plaintiff's Complaint the most liberal construction, the Court finds, for purposes of initial review only, that Plaintiff has stated a plausible retaliation claim and will allow such claim to proceed to service with his discrimination and failure-to-accommodate claims.

**D. Title III of the ADA**

Plaintiff also alleges Defendant discriminated against him in violation of Title III of the ADA, which provides in part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182.

The ADA has three titles addressing discrimination against the disabled in different contexts. "Title I prohibits employment discrimination, 42 U.S.C. § 12112, Title II prohibits discrimination in the services of public entities, 42 U.S.C. § 12132, and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services, 42 U.S.C. §§ 12182, 12184." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir.1998).

Here, Plaintiff's passing reference to a Title III violation based on Defendant's failure to provide him an ASL interpreter "on the floor," Filing No. 1 at 3, is insufficient to allege a plausible Title III claim. *See Woods v. Wills*, 400 F. Supp. 2d 1145, 1161 (E.D. Mo. 2005) ("A person alleging discrimination under Title III must show that (1) she is disabled within the meaning of the ADA, (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) the defendant took adverse action against the plaintiff based upon her disability, and (4) the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." (citing 42 U.S.C. § 12182(a) and (b)(2)(A)(ii); *Amir*, 184 F.3d at 1026 (8th Cir.1999))). Regardless,

10

Plaintiff's claims of disability discrimination clearly arise in the context of his employment with Defendant and, thus, fall squarely within Title I of the ADA. *See Hill v. Shakopee Mdewakanton Sioux Cmty.*, No. 17-CV-1300 (PJS/LIB), 2017 WL 9672392, at *4 (D. Minn. Oct. 12, 2017), *report and recommendation adopted*, No. 17-CV-1300 (PJS/LIB), 2018 WL 1446413 (D. Minn. Mar. 23, 2018) ("Federal Courts across the country have found that employment discrimination claims must be brought under Title I, and they may not be brought under Title III." (citing cases)); *see also Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998) ("Title III was not intended to govern disability discrimination in the context of employment." (citing *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998)); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("[T]he statutory framework of the ADA expressly limits discrimination in employment practices to Title I of the ADA . . . .").

Accordingly, Plaintiff's discrimination claim under Title III will be dismissed for failure to state a claim upon which relief may be granted.

## IV. OTHER PENDING MOTIONS

In his Complaint, Plaintiff included a request for the appointment of counsel. Filing No. 1 at 8. Plaintiff later submitted correspondence on September 15, 2023, which the Court docketed as a Motion to Clarify, Filing No. 6, and in which Plaintiff reiterates his request for the appointment of counsel.[6]

"There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it

---

[6] The Court notes that Plaintiff also seeks appointment of counsel in his two other employment discrimination cases pending before this Court, Case Nos. 8:23CV81 and 8:23CV280. Filing No. 6. Plaintiff's request for counsel in his other cases will be handled by separate order in those cases.

11

has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)). Moreover, "[t]he appointment of counsel 'should be given serious consideration . . . if the plaintiff has not alleged a frivolous or malicious claim' and the pleadings state a prima facie case." *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992) (quoting *In re Lane*, 801 F.2d 1040, 1043 (8th Cir.1986) (internal quotation omitted)).

Here, the Court has concluded that Plaintiff has alleged sufficient facts to state claims for relief under Title I of the ADA. The Court's conclusion is based on a very liberal construction of the Complaint in recognition of Plaintiff's limited English language abilities, and it is evident that Plaintiff's ability to present his claims, at least past the initial review stage, is hindered due to his limited English. Plaintiff represents in his motion that he cannot afford to hire a lawyer and attorneys have declined to represent him because they are "full" or "can't accept new case[s]." Filing No. 6. Given Plaintiff's English language limitations and his statements in his motion, the Court concludes that Plaintiff and the Court would benefit from the appointment of counsel at this stage in the matter. Counsel is appointed as set forth below.

## V. CONCLUSION

Keeping in mind the liberal construction due pro se complaints, the lesser pleading standard to which pro se litigants are held, and the fact that Plaintiff's

Complaint was written in what is not Plaintiff's primary language, the Court concludes, for purposes of initial review, that Plaintiff has alleged plausible claims under Title I of the ADA for discrimination, failure to accommodate, and retaliation, as well as companion claims under the NFEPA. Plaintiff's purported claim under Title III of the ADA will be dismissed, however, for failure to state a claim upon which relief may be granted.

Accordingly, this matter will proceed to service of process, and the Court will appoint counsel to assist Plaintiff with the prosecution of this case. The Court cautions Plaintiff, however, that allowing his claims to proceed to service of process is not a determination of the merits of his claims or potential defenses to them.

IT IS THEREFORE ORDERED that:

1. Plaintiff's claim under Title III of the ADA is dismissed without leave to amend.

2. This case shall proceed to service of process as to Plaintiff's claims under Title I of the Americans With Disabilities Act for discrimination, failure to accommodate, and retaliation, as well as companion claims under the Nebraska Fair Employment Practice Act.

3. The Clerk of the Court is directed to complete and issue summonses for **Defendant Becton, Dickinson and Company at 1 Becton Drive, Franklin Lakes, NJ 07417-1880,** and **Defendant BD Medical-Medication Delivery Solutions at 1852 10th Ave., Columbus, NE 68601**. The Clerk of the Court is further directed to deliver the summonses, the necessary USM-285 Forms, copies of Plaintiff's Complaint, Filing No. 1, and this Memorandum and Order to the Marshals Service for service of process on

Defendants Becton, Dickinson and Company and BD Medical-Medication Delivery Solutions.[7]  Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service.  *See* Federal Rule of Civil Procedure 4(h); Neb. Rev. Stat. § 25-509.01.

4. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

5. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint.  However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

6. The Clerk of Court is directed to set a case management deadline using the following text: **March 27, 2024**: deadline for service of process.

7. Plaintiff's Motion to Clarify, construed as a motion for the appointment of counsel, Filing No. 6, is granted.

8. With thanks for accepting the appointment, Damilola J. Oluyole and the Yole Law Firm is hereby appointed to represent Plaintiff Jonathan F. Ramos in this matter.[8]

9. Damilola J. Oluyole is directed to promptly enter their appearance as counsel in this case.

---

[7] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service.  *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013).  Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases."  *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

[8] The undersigned has been authorized by the Chief Judge to appoint counsel pursuant to the Amended Plans for the Administration of the Federal Practice Fund and the Federal Practice Committee.

10. Upon entry of counsel's appearance in CM/ECF, the Clerk of Court shall immediately pay from the Federal Practice Fund the sum of $1,000 to the Yole Law Firm.

11. A second and last installment of $1,000 shall become due and payable to the Yole Law Firm upon the entry of judgment or other closing documents in the case.

12. Subject to the prior approval of the Court, counsel may incur reasonable expenses when representing Plaintiff in accordance with the Amended Plans for the Administration of the Federal Practice Fund and the Federal Practice Committee. *See also* NEGenR 1.7(g) and NECivR 54.3-54.4.

13. Should Plaintiff succeed, and counsel be awarded attorney fees and expenses that exceed $2,000 plus expenses, counsel shall reimburse the Federal Practice Fund for the fees and expenses paid from the fund.

14. Counsel for Plaintiff is appointed to assist Plaintiff with the prosecution of his claims and through trial, if this case should proceed to trial. The appointment will not extend to any appeal after trial.

15. The Clerk of Court is directed to send a copy of this Memorandum and Order to Plaintiff and Plaintiff's appointed counsel.

16. Because this non-prisoner case is proceeding to service of process and counsel has been appointed, this case is removed from the pro se docket at the direction of the Court. The Clerk's office shall randomly assign new judges to this case and request a reassignment order from the Chief Judge.

Dated this 28th day of December, 2023.

BY THE COURT:

*[signature]*

Joseph F. Bataillon
Senior United States District Judge